1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

Jun 24, 2020

SEAN F. MCAVOY, CLERK

5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF WASHINGTON**

7  JARRID M.,[1]

                    Plaintiff,

8           vs.

9

10  ANDREW M. SAUL,
   COMMISSIONER OF SOCIAL
   SECURITY,[2]

11                    Defendant.

12

No. 1:19-cv-03057-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 16

13  _____

14  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

15  identifies them by only their first names and the initial of their last names.

16  Additionally, Plaintiff is transgender and as such, female pronouns are used in this

17  order.

18  [2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

19  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs

20  the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 15, 16.  The parties consented to proceed before a magistrate judge.  ECF No. 8.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 15, and denies Defendant's motion, ECF No. 16.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On March 6, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging an amended disability onset date of March 6, 2015.  Tr. 47, 155-60.  The application was denied initially, Tr. 89-93, and on reconsideration, Tr. 97-100.  Plaintiff appeared before an administrative law judge (ALJ) on April 16, 2018.  Tr. 41-65.  On May 22, 2018, the ALJ denied Plaintiff's claim.  Tr. 12- 31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 6, 2015.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments:  major

depressive disorder, gender identity disorder, generalized anxiety disorder, posttraumatic stress disorder, and dysthymic disorder.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18-20.  The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following limitations:

> [Plaintiff] is able to understand, remember, and carry out short, simple, routine, and repetitive tasks.  She can perform work in which contact with the general public is not an essential element of any task; however, incidental and superficial contact is not precluded. [Plaintiff] is able to adapt to simple changes and can perform tasks with simple goals predetermined by the employer.

Tr. 20.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 26.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as janitor-night cleaner, packager, electrical accessories assembler, and buffing machine tender.  *Id.*  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 27.

ORDER - 7

On February 1, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ conducted a proper step-two; and

4.  Whether the ALJ conducted a proper step-three analysis.

ECF No. 15 at 2.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims.  ECF No. 15 at 18-21.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

ORDER - 8

symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

ORDER - 9

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929 (c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 21.

*1. Inconsistent Statements*

The ALJ found Plaintiff's allegations were inconsistent with her statements

to providers.  Tr. 21-22 (citing Tr. 247, 274, 278, 280).  In evaluating a claimant's

symptom claims, an ALJ may consider the consistency of an individual's own

statements made in connection with the disability-review process with any other

ORDER - 10

existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ observed that Plaintiff denied experiencing psychiatric symptoms or denied having symptoms of depression and anxiety and noted that Plaintiff only began reporting significant symptoms of depression and anxiety to providers after she applied for disability. Tr. 21-22. The first record cited by the ALJ is a visit for rectal bleeding, in which Plaintiff denied psychiatric symptoms. Tr. 247. In the next records, while Plaintiff denied depression and anxiety at the cited visits, she reported her mother wanted her to re-engage in therapy and she was assessed with anxiety. Tr. 274, 278, 280, 284. As discussed more fully below, the Court finds the ALJ's selective citation of the record as to Plaintiff's mental health symptoms is not supported by substantial evidence.

Plaintiff has alleged no improvement in her symptoms with medication, Tr. 57-58, which the ALJ found inconsistent with the evidence, Tr. 22. While Plaintiff reported some improvement with Buspar, Tr. 371, 406, she stopped taking it and had difficulties getting it, Tr. 367, 395. Plaintiff described the improvement on Buspar as slightly decreasing her anxiety and irritability at one visit, Tr. 386, but stated it was helping "okay", Tr. 461, and was "still helpful", Tr. 454, at other visits. Plaintiff reported Remeron helped only "a bit." Tr. 433. The record as a whole does not demonstrate that Plaintiff stated her symptoms were ever more than

ORDER - 11

minimally improved by medication.  As such, this reasoning is not a clear and convincing reason to reject Plaintiff's statements.

### 2. Inconsistent Objective Evidence

The ALJ found Plaintiff's allegations inconsistent with the objective evidence, including minimal observations of psychiatric difficulties and Plaintiff's performance on mental status exams (MSEs).  Tr. 22-23.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  MSEs are objective measures of an individual's mental health.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ found there were minimal observations of psychological difficulties.  Tr. 22 (citing Tr. 247 (no psychiatric symptoms reported at a visit for rectal bleeding); Tr. 275, 279, 281, 285, 313 (normal MSEs at hormone therapy

ORDER - 12

appointments); Tr. 289 (flat affect, symptoms consistent with major depression);

Tr. 304 (increased psychomotor activity, flat affect, depressed, uneasy,

hallucinations per history, soft speech); Tr. 332 (flat affect, depressed, uneasy, fair

attention); Tr. 338 (flat affect and shy); Tr. 348 (depressed mood); Tr. 368 (okay

mood with congruent, dysphoric affect); Tr. 381 (appeared somewhat anxious, did

not make much eye contact); Tr. 382 (appeared anxious, fidgeting); Tr. 384

(appeared anxious, made very limited eye contact); Tr. 392 (quiet and tearful for

much of the appointment, cried silently at times); Tr. 394 (appeared anxious, had a

difficult time making eye contact, picked at her pants); Tr. 396 (mood "not as

good", affect congruent and dysphoric, trace anxious);  Tr. 408 (better mood,

congruent, euthymic affect, trace anxious); Tr. 413 (better mood, congruent,

neutral affect);  Tr. 456 ("not so good" mood, depressed/restricted affect, poor eye

contact, fair to poor insight/judgment); Tr. 460 (moderate mood, some eye

contact); Tr. 462 (guarded but cooperative, "okay" mood, neutral affect,

insight/judgment fair, improving)).

However, the ALJ's discussion of the mental health medical evidence

largely omits significant mental health symptoms.  The ALJ's discussion of the

cited records only discusses "minimal" symptoms, and some symptoms such as

flat, anxious, or depressed affect.  Tr.  21.  The ALJ stated the absence of Plaintiff

presenting with "serious psychiatric symptoms" is inconsistent with Plaintiff's

allegations.  Tr. 22.  Yet, the cited records include numerous abnormal findings not discussed by the ALJ and notes regarding serious psychiatric symptoms including hallucinations, Tr. 304, 324, suicidal ideation, Tr. 303, 319, 331, and self-harm, Tr. 358, 384.  Plaintiff's mother reported Plaintiff had increased mood lability.  Tr. 284.  Plaintiff was observed as having poor eye contact and allowing her mother to answer questions for her.  Tr. 338.  Plaintiff had only fair hygiene, was viewed as haughty and sarcastic, fidgety, winced when her mother touched her, had only fair concentration, and poor eye contact.  Tr. 348.  Plaintiff reported engaging in multiple forms of self-harm at several appointments, which the ALJ did not address anywhere in the decision.  Tr. 382, 384, 392, 460.  Plaintiff engaged in self-harm by pulling her hair out, resulting in thinning hair Plaintiff showed her provider, followed with Plaintiff shaving her hair off.  Tr. 384, 392.  Plaintiff also has a history of a suicide attempt, inpatient hospitalization and ongoing suicidal ideation, none of which were addressed by the ALJ.  Tr. 303, 319, 331, 345, 351.

The ALJ cited to multiple MSEs with normal to mildly abnormal findings, but largely ignored the abnormal observations discussed above, such as poor eye contact, fair concentration and hygiene, and abnormal behavior when engaging in conversations during an appointment.  Tr. 22-23.  The ALJ found Dr. Ruddell and Dr. Cline's MSEs "unpersuasive," though both MSEs demonstrated significant impairments.  Tr. 23 (citing Tr. 254, 324).  Dr. Ruddell found Plaintiff was

anxious, depressed, restless, labile/tearful, with poor voice quality, impaired recent and immediate memory, impaired executive functioning and problem solving, and inadequate eye contact.  Tr. 254.  Dr. Cline noted Plaintiff had abnormal abstract thought, insight, judgment, perception and thoughts.  Tr. 324.

The ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings.  *See, e.g.,* *Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).  In citing portions of the record that show milder examination findings while the longitudinal record shows more mixed results, and not analyzing significant psychiatric symptoms, the ALJ's characterization of the record is not supported by substantial evidence.

### 3.  *Activities of Daily Living*

The ALJ found Plaintiff's activities inconsistent with her allegations.  Tr. 23. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the

ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ noted Plaintiff engaged in social activities, worked part-time in a position where she interacted with others for two months, exercised, went out alone, and obtained her driver's license. Tr. 23. The ALJ found these activities were inconsistent with Plaintiff's reported difficulties socializing and going out alone. *Id.* Plaintiff reported some online and in person socializing with friends and family but reported nervousness and difficulty socializing and getting out of the house. Tr. 421. Plaintiff particularly struggled with crowds. Tr. 433. Plaintiff attempted to work part-time for less than two months but was overwhelmed with the work and had increased anxiety when she had to work. Tr. 454. Plaintiff's activities are not clearly inconsistent with her allegations of disabling psychological symptoms, nor is Plaintiff's performance of the activities indicative that her performance would be successfully transferable to a work setting. As such, this was not a clear and convincing reason to reject Plaintiff's statements.

## 4. Lack of Treatment

The ALJ found Plaintiff's allegations inconsistent with her minimal treatment. Tr. 23-24. Unexplained, or inadequately explained, failure to seek

ORDER - 16

treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ considered Plaintiff's gaps in treatment, including missed appointments, and periods where Plaintiff did not take her psychiatric medication as prescribed. Tr. 22-23. The ALJ found Plaintiff did not offer any reason to justify the inconsistency in her treatment. Tr. 23. However, the ALJ failed to consider the barriers Plaintiff's mental health conditions caused in her accessing and continuing treatment. Dr. Cline opined plaintiff's personality disorder may have played a role in her limited progress in therapy. Tr. 323. Plaintiff reported paranoia leads her to feeling like stopping her medications. Tr. 345. Plaintiff reported forgetting appointments, Tr. 363, having trust issues regarding counselors,

ORDER - 17

Tr. 215, feeling anxious about having appointments too frequently, Tr. 375, and

missing an appointment due to having been engaging in self-harm, *id.*  Plaintiff

also reported difficulty with accessing transportation for appointments.  Tr. 384.

As the ALJ did not consider and address Plaintiff's reasons for having inconsistent

treatment, this was not a clear and convincing reason to reject Plaintiff's

statements.

Because the ALJ failed to provide clear and convincing reason supported by

substantial evidence to discredit Plaintiff's symptom testimony, the ALJ is

instructed to reconsider Plaintiff's symptom testimony on remand and incorporate

the reported limitations into the RFC or give clear and convincing reasons to reject

the statements.

**B. Medical Opinion Evidence**

Plaintiff argues that the ALJ improperly weighed the medical opinions of

Alysa Ruddell, Ph.D., Daniel Neims, Psy.D., and R.A. Cline, Psy.D.  ECF No. 15

at 7-17.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan,* 246 F.3d at 1201-02 (citations omitted).  Generally, a treating

ORDER - 18

physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

1    *1. Dr. Ruddell*

2    Dr. Ruddell performed a psychological examination on November 10, 2014

3    and diagnosed Plaintiff with anxiety disorder, major depressive disorder, gender

4    identity disorder, and bipolar disorder.  Tr. 251-55.  Dr. Ruddell opined that

5    Plaintiff had marked symptoms of anhedonia, anxiety and isolation, and severe

6    symptoms of sleep disturbance.  Tr. 252.  Dr. Ruddell further opined Plaintiff had

7    marked work-related limitations in her abilities to learn new tasks, adapt to

8    changes, communicate/perform effectively, set realistic goals and planning

9    independently, and maintain appropriate behavior; and a severe limitation in her

10    ability to complete a workday/week without interruptions from her symptoms.  Tr.

11    253.

12    The ALJ gave Dr. Ruddell's opinion little weight.  Tr. 24-25.  As Dr.

13    Ruddell's opinion was contradicted by the opinions of James Bailey, Ph.D., Tr. 73-

14    75, and Dan Donahue, Ph.D., Tr.85-87, the ALJ was required to identify specific

15    and legitimate reasons to reject the opinion.  *See Bayliss*, 427 F.3d at 1216.

16    First, the ALJ found the opinion is internally inconsistent.  Tr. 24.  Relevant

17    factors to evaluate any medical opinion include the amount of relevant evidence

18    that supports the opinion, the quality of the explanation provided in the opinion,

19    and the consistency of the medical opinion with the record as a whole.

20    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.

ORDER - 20

1  Moreover, a physician's opinion may be rejected if it is unsupported by the

2  physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

3  2003).

4  　　　Here, the ALJ cited to one alleged inconsistency within the opinion. Tr. 24.

5  The ALJ found Plaintiff's ability to perform a three-step command inconsistent

6  with the opinion Plaintiff would have difficulty with learning new tasks. *Id.*

7  However, while Dr. Ruddell did not indicate Plaintiff had any difficulties with

8  concentration, Plaintiff had an impaired memory. Tr. 254. Plaintiff's ability to

9  recall three words after five minutes and at the end of the interview was impaired,

10  as was her ability to recall a series of digits. *Id.* Without a more meaningful

11  analysis by the ALJ, the Court is unable to determine if the ALJ's decision to reject

12  Dr. Ruddell's opinion on this basis is legitimate, specific, and supported by

13  substantial evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir.

14  2015) (demanding that the ALJ set forth their reasoning in a way that allows for

15  meaningful review); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

16  　　　Second, the ALJ reasoned the opinion consisted of checked boxes with no

17  explanation. Tr. 24. The fact that an opinion is rendered, in part, in a check box

18  form is not reason alone to reject the opinion. *See Trevizo v. Berryhill,* 871 F.3d

19  664, 677 n.4 (9th Cir. 2017). However, the Social Security regulations "give more

20  weight to opinions that are explained than to those that are not." *Holohan*, 246

ORDER - 21

1   F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including

2   a treating physician, if that opinion is brief, conclusory and inadequately supported

3   by clinical findings." *Bray*, 554 at 1228.

4       While a portion of Dr. Ruddell's opinion consists of checkboxes, the

5   checkboxes are accompanied by a clinical interview, mental status examination,

6   assessment, clinical findings, and notes explaining how the symptoms impact

7   Plaintiff's functioning. Tr. 251-55. Dr. Ruddell opined Plaintiff's anhedonia

8   causes a marked limitation in her ability to concentrate, attend and focus on work-

9   related tasks. Tr. 252. Dr. Ruddell opined Plaintiff's anger causes moderate

10   limitations due to causing conflict on the job, a hostile work environment and

11   absenteeism. *Id.* She opined Plaintiff's anxiety causes marked limitations in

12   Plaintiff's ability to concentrate on tasks and Plaintiff's isolation causes marked

13   limitations due to issues including absenteeism. *Id.* Dr. Ruddell also opined

14   Plaintiff's sleep disturbance causes severe limitations in concentration, and causes

15   difficulties with alertness, fostering accidents and careless mistakes. *Id.* The

16   ALJ's finding that Dr. Ruddell's opinion consisted of checkboxes and was not

17   explained is not supported by substantial evidence.

18       Third, the ALJ found Dr. Ruddell did not review any treatment records and

19   thus based her opinion on Plaintiff's onetime examination. Tr. 25. The extent to

20   which a medical source is "familiar with the other information in [the claimant's]

ORDER - 22

1    case record" is relevant in assessing the weight of that source's medical opinion.

2    *See* 20 C.F.R. §416.927(c)(6).  Additionally, the number of visits a claimant had

3    with a particular provider is a relevant factor in assigning weight to an opinion.  20

4    C.F.R. § 416.927(c).  However, the fact that an evaluator examined Plaintiff one

5    time is not a legally sufficient basis for rejecting the opinion.  The regulations

6    direct that all opinions, including the opinions of examining providers, should be

7    considered.  20 C.F.R. § 416.927(b), (c).  The Court notes that while it is accurate

8    that Dr. Ruddell did not review any records when forming her opinion, the ALJ's

9    rationale in rejecting the opinion as based on a onetime examination is inconsistent

10    with the ALJ giving great weight to the opinions of Dr. Bailey and Dr. Donahue,

11    whom did not examine nor treat Plaintiff.  Tr. 24-25, 251.  As such, this was not a

12    specific and legitimate reason to reject Dr. Ruddell's opinion.

13        Fourth, the ALJ further noted Plaintiff's statements and presentation during

14    Dr. Ruddell's examination were inconsistent Plaintiff's treatment records.  Tr. 24.

15    Relevant factors when evaluating a medical opinion include the amount of relevant

16    evidence that supports the opinion and the consistency of the medical opinion with

17    the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Here,

18    the ALJ cited to records in support of the finding that Plaintiff reported information

19    to Dr. Ruddell that was inconsistent with what she reported to other providers.  Tr.

20    24-25 (citing Tr. 252, 254, 269, 280, 284).  As discussed *supra,* the ALJ erred in

1    her consideration of Plaintiff's symptom complaints.  In her analysis of the

2    consistency of Plaintiff's reports to Dr. Ruddell and the consistency with other

3    medical records, the ALJ again did not consider all of the relevant evidence.  This

4    reason is not supported by substantial evidence in the record.

5         Fifth, the ALJ reasoned Dr. Ruddell's opinion was inconsistent with the

6    record as a whole, including minimal observations of psychiatric symptoms,

7    Plaintiff's mental status examination performance, and Plaintiff's activities.  Tr.

8    25.  An ALJ may discredit physicians' opinions that are unsupported by the record

9    as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

10   2004).  However, an ALJ must consider all of the relevant evidence in the record

11   and may not point to only those portions of the records that bolster her findings.

12   *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively

13   rely on some entries in plaintiff's records while ignoring others).  The ALJ is not

14   permitted to "cherry pick" from mixed evidence to support a denial of benefits.

15   *Garrison*, 759 F.3d at 1017 n.23.

16        As discussed *supra*, the ALJ cited portions of the record to support

17   individual points while ignoring the rest of the abnormal findings within the record

18   (e.g., citing to a record where Plaintiff did not report hallucinations to support the

19   contention Plaintiff did not report hallucinations to others, while ignoring the

20   references in the same record to Plaintiff's reports of self-harm, irritability, anger

ORDER - 24

and panic attacks).  *See* Tr. 25 (citing Tr. 269).  The longitudinal record shows

Plaintiff had generally abnormal mental status examinations and observations of

psychological symptoms.  Tr. 254, 323, 348, 368-69, 386-87, 396-97, 423.

 While the ALJ offered additional reasons to reject Dr. Ruddell's opinion, the

Court finds the ALJ erred in her consideration of the opinion given the multiple

errors addressed *supra*.  The ALJ found Plaintiff has only moderate limitations and

is capable of sustaining a full-time workweek, Tr. 19-20, contrary to Dr. Ruddell's

opinion, Tr. 253.   As such, the ALJ's rejection of Dr. Ruddell's opinion was not

harmless.  *See Molina,* 674 F.3d at 1111.  Defendant argues the error was harmless

as Dr. Ruddell's opinion was rendered prior to the alleged onset date.  ECF No. 16

at 14.  However, the opinion was given less than four months prior to the amended

onset date, and the ALJ did not address the timing of the opinion; as such, the

Court will not consider this post-hoc rationalization.  *See Pinto v. Massanari*, 249

F.3d 840, 847-48 (9th Cir. 2001).

 *2.  Dr. Neims*

 Dr. Neims reviewed Dr. Ruddell's opinion and found the evaluation

supported Dr. Ruddell's opinion regarding Plaintiff's limitations and the duration

of impairment.  Tr. 446-47.  Dr. Neims found the January 1, 2014 alleged onset

date was not supported by the evidence, but the November 10, 2014 date was more

appropriate, given the evidence from the evaluation on that date.  Tr. 447.

ORDER - 25

1    The ALJ gave Dr. Neims' opinion little weight.  Tr. 25.  As Dr. Neims'

2    opinion was based exclusively on Dr. Ruddell's evaluation and opinion, the ALJ

3    rejected the opinion for the same reasons she rejected Dr. Ruddell's opinion.  *Id.*

4    As the ALJ's rejection of Dr. Ruddell's opinion was erroneous, and the ALJ gave

5    no additional analysis in rejecting Dr. Neims' opinion, the Court is unable to

6    determine if the ALJ's decision to reject Dr. Neims' opinion is legitimate, specific,

7    and supported by substantial evidence.  *See Brown-Hunter*, 806 F.3d at 492

8    (demanding that the ALJ set forth its reasoning in a way that allows for meaningful

9    review); *Embrey*, 849 F.2d at 421-22.  This opinion must be reconsidered on

10   remand.

11       *3.  Dr. Cline*

12       Dr. Cline examined Plaintiff on September 27, 2016 and diagnosed Plaintiff

13   with dysthymic disorder, major depressive disorder, PTSD, generalized anxiety

14   disorder, a provisional diagnosis of borderline personality disorder, and marijuana

15   use disorder, and provided an opinion on Plaintiff's functioning.  Tr. 319-324.  Dr.

16   Cline opined Plaintiff had marked limitations in performing work within a

17   schedule and maintaining attendance, communicating and performing work

18   effectively and completing a normal workday/workweek.  Tr. 322.

19       The ALJ gave Dr. Cline's opinion little weight.  Tr. 25.  As the examining

20   source's opinion was contradicted by the opinions of James Bailey, Ph.D., Tr. 73-

ORDER - 26

75, and Dan Donahue, Ph.D., Tr.85-87, the ALJ was required to give specific and legitimate reasons to reject the opinion.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ reasoned Dr. Cline based her opinion on Plaintiff's self-report, which the ALJ found inconsistent with the other evidence.  Tr. 25.  An ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct. *Smolen*, 80 F.3d at 1284.  As discussed *supra,* the ALJ erred in her consideration of Plaintiff's symptom complaints.

Second, the ALJ reasoned Dr. Cline's opinion was temporary, as she stated the limitations would last between nine and 12 months.  Tr. 25.  Temporary limitations are not enough to meet the durational requirement for a finding of disability.  20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). Defendant concedes that Dr. Cline's opinion states that the limitations would last up to 12 months, which meets the durational requirements.  ECF No. 16 at 17.  As such, this was not a legitimate reason to reject Dr. Cline's opinion.  Defendant argues the error was harmless as the ALJ gave other specific and legitimate reasons

for rejecting Dr. Cline's opinion, however, as discussed herein, the other reasons were also erroneous and as such this error was harmful.

Next, the ALJ found Dr. Cline's opinion is inconsistent with the record as a whole, including minimal observations of psychiatric symptoms, Plaintiff's mental status examinations and Plaintiff's activities. Tr. 25. As discussed *supra*, the ALJ's analysis of the record is incomplete and not supported by substantial evidence. Although the ALJ identified additional reasons for rejecting Dr. Cline's opinion, the Court finds the ALJ erred in her consideration of Dr. Cline's opinion for the reasons discussed herein.

In summary, the ALJ erred by discounting the opinions of Dr. Ruddell, Dr. Neims, and Dr. Cline without providing specific and legitimate reasons for rejecting the opinions. These errors were harmful, because if the opinions were credited, the ALJ would be required to add the supported limitations to the RFC and reassess whether Plaintiff is capable of performing sustained gainful work. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The ALJ is instructed to reconsider the medical opinion evidence on remand and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinions.

**C. Step-Two Analysis**

Plaintiff contends the ALJ erred at step two by failing to identify her digestive issues and borderline personality disorder as severe impairments.  ECF No. 15 at 3-7.  At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).

To establish a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.921.  In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  *Id*.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to

ORDER - 29

do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, the ALJ considered the record concerning the challenged impairments, but concluded these conditions were non-severe as they did not more than minimally impact Plaintiff's ability to perform basic work activities or were not medically determinable.  Tr. 18.

----

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 30

*1. Digestive issues*

The ALJ found that the record did not support a finding that Plaintiff's anorexia is a medically determinable impairment. *Id.* Additionally, the ALJ determined that Plaintiff's other physical symptoms/conditions did not last for a continuous period of twelve months or did not cause significant limitations in functioning. *Id.*

The records demonstrate that Plaintiff experienced digestive symptoms during the relevant adjudicative period and that her BMI decreased over time. In 2015, Plaintiff weighed 137.5 pounds, without a calculated BMI. Tr. 314. By October 2016, her weight dropped to 129 pounds. Tr. 412. In April 2017, her BMI was 17.05, Tr. 328, and in October 2017, Plaintiff's BMI was 16.78, Tr. 449.

In November 2014, Plaintiff reported constipation for "quite a while." Tr. 251. In February 2015, Plaintiff and her mother reported Plaintiff will not eat for days and will then overeat to the point of feeling ill. Tr. 264. In June 2015, again Plaintiff reported she goes days without eating. Tr. 207. In May 2016, Plaintiff reported she had experienced nausea for several months, and Dr. Lindgren assessed her with poor appetite and anorexia. Tr. 330-32. Dr. Lindgren coded the anorexia assessment with an international classification of diseases (ICD) label of "R63", indicating anorexia meaning loss of appetite and not a diagnosis of anorexia nervosa. *See* ICD-10-CM, available at:

https://www.icd10data.com/ICD10CM/Codes/F01-F99/F50-F59/F50-#F50.0 (last accessed June 24, 2020). Dr. Lindgren observed Plaintiff appeared under-nourished. Tr. 331.

In September 2016, Plaintiff reported she had been experiencing a "nonexistent" appetite for months. Tr. 319. In July 2017, Plaintiff reported her diarrhea had been more frequent. Tr. 368. In May 2017, Plaintiff complained of diarrhea. Tr. 325-26. In October 2017, Plaintiff reported right upper quadrant pain, nausea and diarrhea, and reported the symptoms were worse with eating. Tr. 448-49. Plaintiff's abdomen was tender to palpation and Dr. Lindgren diagnosed right upper quadrant pain. Tr. 449. Dr. Lindgren suspected cholecystitis and recommended an ultrasound but there are no follow-up records. *Id.*

At the April 2018 hearing, Plaintiff was not asked about any physical limitations nor her current weight. Tr. 49-59. While Plaintiff's function report focused on mental health symptoms, she reported lacking strength and energy to complete tasks. Tr. 168-71. She also reported only being able to walk half a mile before needing to rest for 10 minutes. Tr. 173. As the case is being remanded to reconsider Plaintiff's symptom complaints and the medical opinion evidence, the ALJ is also instructed to perform the five-step analysis anew, including reconsidering if Plaintiff has a severe physical impairment at step two.

### 2. *Personality disorder*

The ALJ found Plaintiff's major depressive disorder, gender identity disorder, generalized anxiety disorder, posttraumatic stress disorder and dysthymic disorder to be severe impairments. Tr. 17. The ALJ stated that there were other psychiatric diagnoses in the record, and the "decision addresses all the limitations that the claimant has alleged or has been opined, no matter the diagnostic label." Tr. 18. The ALJ did not specifically address the borderline personality disorder diagnosis. When an ALJ fails to properly consider a diagnosis and that lack of consideration leads to the ALJ crafting an RFC that is incomplete, flawed and not supported by substantial evidence in the record, the ALJ has erred at step two. *See Hill*, 698 F.3d at 1161.

Dr. Cline found Plaintiff met the diagnostic criteria for borderline personality disorder and gave a provisional diagnosis of borderline personality disorder in October 2016. Tr. 319-20, 323. Dr. Robinson diagnosed Plaintiff with borderline personality disorder in July 2017, Tr. 369, after counselor Ms. Ellis found Plaintiff met the criteria for borderline personality disorder and staffed her case with a doctor, Tr. 392. At the appointment with Ms. Ellis, Plaintiff reported feeling like an "angry arrogant child" and reported punching herself in the face and pulling her own hair out on a monthly basis. *Id.* Plaintiff cried while showing Ms. Ellis several bald spots. *Id.* Ms. Ellis found Plaintiff met eight of the nine

borderline personality disorder criteria, and only five are required for a diagnosis. *Id.*

The diagnostic criteria for borderline personality disorder include intense, inappropriate or uncontrollable anger, self-harming behavior/thoughts, unstable relationships and impulsive behaviors. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5th Ed. at 664 (2013). Treatment of borderline personality disorder is often complicated "by the fact that the characteristics that define a personality disorder may not be considered problematic by the individual." *Id.* at 647.

Throughout the record, Plaintiff demonstrated abnormal social behavior at appointments. She spent some appointments tearful through the appointment. Tr. 392. She was observed as disheveled, withdrawn, depressed and anxious, with monotone one-word answers. Tr. 328. She has been viewed as having a flat affect, being shy with poor eye contact. Tr. 338. At an exam, Plaintiff was anxious and depressed, with poor voice quality, she avoided eye contact, played with her phone case and broke into tears at the end of the exam. Tr. 254. At another exam, Plaintiff had quiet speech, poor eye contact, flattened and withdrawn affect, and multiple abnormalities on exam. Tr. 324. She has repeatedly reported minimal social activities and difficulty interacting with others,

Tr. 58, 171, 252, 319, 411, 421, though she reported medication made her a "little" more comfortable socially, Tr. 406.

Plaintiff has also engaged in self-injurious behavior and reported thoughts of suicide and self-harm. Plaintiff reported recent cutting in 2015, 2016, 2017 and 2018. Tr. 263, 324, 345, 395, 400, 454, 460. She has also reported punching herself and pulling out her hair. Tr. 392, 460. She has reported thoughts of self-harm and suicidal ideation in 2015, 2016 and 2017. Tr. 206, 264, 324, 345, 351, 358, 364, 411, 438, 460.

Plaintiff argues that the ALJ failed to consider the unique aspects of Plaintiff's personality disorder, including her difficulty maintaining stable relationships, her impulsive behavior and self-harm. ECF No. 15 at 6-7. As the case is being remanded to reconsider the medical opinion evidence and Plaintiff's symptom claims, and Plaintiff has presented evidence of her borderline personality disorder, the ALJ is instructed to reconsider whether Plaintiff's personality disorder is a severe impairment, and whether the impairment causes any additional limitations that must be accounted for in the RFC.

**D. Step-Three Analysis**

Plaintiff contends that the ALJ erred by finding that Plaintiff's digestive issues did not meet or equal Listing 5.08. ECF No. 15 at 5-6. At step three, the

ORDER - 35

ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii).  The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.' " *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy*, 758 F.3d at 1176.  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from

ORDER - 36

multiple impairments and none of them individually meets or equals a listed

impairment, the collective symptoms, signs and laboratory findings of all of the

claimant's impairments will be evaluated to determine whether they meet or equal

the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099.

However, " '[m]edical equivalence must be based on medical findings," and "[a]

generalized assertion of functional problems is not enough to establish disability at

step three.' " *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. §

416.926(a).

The claimant bears the burden of establishing his impairment (or

combination of impairments) meets or equals the criteria of a listed impairments.

*Burch*, 400 F.3d at 683. "An adjudicator's articulation of the reason(s) why the

individual is or is not disabled at a later step in the sequential evaluation process

will provide rationale that is sufficient for a subsequent reviewer or court to

determine the basis for the finding about medical equivalence at step 3." Social

Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27,

2017).

Here, the ALJ found that Plaintiff's impairments and combinations of

impairments did not meet or equal any listings. Tr. 18-20. The ALJ considered

listings 12.04, 12.06 and 12.08 but did not consider any other listings including

Listing 5.08. Tr. 19. Listing 5.08 is met when a Plaintiff demonstrates "weight

ORDER - 37

loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. Part 404, Subpart P, Appendix 1.

A review of the evidence shows that Plaintiff's BMI was below 17.50 at least sixty days apart and within a six-month period. On April 26, 2017, her BMI was 17.05, Tr. 328, and on October 6, 2017, her BMI was 16.78, Tr. 449. While Plaintiff's BMI was previously higher, there is at least a sixth-month period where Plaintiff maintained a BMI under 17.5. *See, e.g.,* Tr. 331 (BMI 18.59).

As the case is being remanded to reconsider the medical opinion evidence and Plaintiff's symptom claims, and Plaintiff has presented evidence that her impairments may be of equal severity to Listing 5.08, the ALJ is instructed to reconsider whether Plaintiff's impairments meet or equal any listings, including Listing 5.08. The ALJ is further instructed to call a medical expert and a psychological expert to assist in determining if Plaintiff's impairments meet or equal a listing, and if not, what limitations Plaintiff's impairments cause.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 2, 6, 12.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

ORDER - 38

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041,

1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

cases, the Ninth Circuit has "stated or implied that it would be an abuse of

discretion for a district court not to remand for an award of benefits" when three

conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

credit-as-true rule, where (1) the record has been fully developed and further

administrative proceedings would serve no useful purpose; (2) the ALJ has failed

to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the claimant disabled on

remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874

F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

the Court will not remand for immediate payment of benefits if "the record as a

1  whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759

2  F.3d at 1021.

3       While Plaintiff argues immediate benefits are appropriate because she meets

4  or equals Listing 5.08, Plaintiff has not demonstrated her weight loss is due to a

5  digestive disorder, and she did not present an argument as to how she equals

6  Listing 5.08. Plaintiff further urges remand for immediate benefits based on

7  crediting the medical opinions, however, further proceedings are necessary to

8  resolve conflicts in the medical opinion evidence and to take medical expert

9  testimony. As such, the case is remanded for proceedings consistent with this

10  Order.

11                 **CONCLUSION**

12       Having reviewed the record and the ALJ's findings, the Court concludes the

13  ALJ's decision is not supported by substantial evidence and is not free of harmful

14  legal error. Accordingly, **IT IS HEREBY ORDERED**:

15       1. The District Court Executive is directed to substitute Andrew M. Saul as

16  the Defendant and update the docket sheet.

17       2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

18       3. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

19       4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

20  REVERSING and REMANDING the matter to the Commissioner of Social

ORDER - 40

Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED June 24, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 41